1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

3                                                    Nov 30, 2022

SEAN F. McAVOY, CLERK

4

5                         UNITED STATES DISTRICT COURT

6                        EASTERN DISTRICT OF WASHINGTON

7   ALEXIS V.,

8                             Plaintiff,          NO:  1:22-CV-3018-RMP

9        v.                                       ORDER DENYING PLAINTIFF'S
                                                  MOTION FOR SUMMARY
10  COMMISSIONER OF SOCIAL                        JUDGMENT AND GRANTING
    SECURITY,                                     DEFENDANT'S MOTION FOR
                                                  SUMMARY JUDGMENT
11                            Defendant.

12

13       BEFORE THE COURT, without oral argument, are cross-motions for

14  summary judgment from Plaintiff Alexis V.,[1] ECF No. 11, and Defendant the

15  Commissioner of Social Security (the "Commissioner"), ECF No. 12.  Plaintiff

16  seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the

17  Commissioner's denial of her claims for Social Security Income ("SSI") and

18

19  _____

20  [1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first
    name and last initial.

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

Disability Insurance Benefits ("DIB") under Titles XVI and Title II, respectively, of the Social Security Act (the "Act"). *See* ECF No. 11 at 1−2.

Having considered the parties' motions, the administrative record, and the applicable law, the Court is fully informed. For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment, and grants summary judgment in favor of the Commissioner.

## BACKGROUND

### General Context

Plaintiff applied for SSI on June 28, 2016, and for DIB on November 1, 2018. Administrative Record ("AR")[2] 17, 169–85. Plaintiff alleged an onset date of April 4, 2015. AR 170. Plaintiff was 18 years old on the alleged disability onset date and asserted that she was unable to work due to learning disabilities and depression. AR 178, 196. Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing. *See* AR 17.

On November 15, 2018, Plaintiff appeared for a hearing held by Administrative Law Judge ("ALJ") Moira Ausems in Kennewick, Washington. AR 35−37. Plaintiff was represented by counsel Chad Hatfield. AR 36. The ALJ heard from Plaintiff as well as vocational expert Michael Swanson, who participated

---

[2] The Administrative Record is filed at ECF No. 9.

1  telephonically.  AR 37−101.  ALJ Ausems issued an unfavorable decision, and the

2  Appeals Council denied review.  AR 1−6, 28.

3        Plaintiff sought review in the U.S. District Court for the Eastern District of

4  Washington.  On October 5, 2020, United States District Court Judge Edward F.

5  Shea granted summary judgment for Plaintiff and remanded the case for additional

6  proceedings.  AR 589–90.  Judge Shea found that further development of the record

7  was necessary for a proper disability determination.  AR 589.  Judge Shea

8  instructed: "Consistent with Dr. Petaja's suggestion, on remand the ALJ is to order

9  that Plaintiff participate in a Wechsler Adult Intelligence Scale test (or other

10  cognitive intelligence test).  The ALJ shall then reevaluate each of the medical

11  opinions, consider any additional evidence presented, and make findings at each of

12  the five steps of the sequential evaluation process."  AR 589 (citing AR 375).

13        On November 10, 2021, Plaintiff appeared for a second hearing, again

14  represented by Mr. Hatfield, before ALJ Marie Palachuk.  AR 1393.  All parties

15  appeared telephonically, with Plaintiff's consent, due to the novel coronavirus

16  (COVID-19) pandemic.  AR 490.  Plaintiff and vocational expert Patricia Ayerza

17  testified in response to questions from ALJ Palachuk and counsel.  AR 519–35.  ALJ

18  Palachuk asked Plaintiff to limit her testimony to her condition and any treatment

19  that she received or any work that she had done since the prior hearing.  AR 518.  In

20  addition, the record before ALJ Palachuk was supplemented with, among other

21

1    records, a consultative psychological examination report from Linda Lindman, PhD,

2    including Wechsler Adult Intelligence Scale testing.  AR 817–22.

3         Plaintiff testified that since 2018, she had worked in security for Universal

4    Protection Service ("UPS") full time for four to five months; as a part-time car

5    washer for Jiffy Car Wash for six to eight months; and as a housekeeper for

6    approximately one month.  AR 519–24.  Plaintiff stated that she did not perform the

7    jobs quickly enough, required periodic retraining, and/or sought frequent assistance

8    from coworkers.  AR 519–21.  Plaintiff also stated that she became overwhelmed at

9    work and "would have to wait" until she had a lunch break.  AR 522.  Plaintiff

10   testified that she had received additional mental health treatment in the two years

11   prior to the second hearing and learned techniques to calm herself down in

12   approximately fifteen minutes.  AR 522–23.

13        Plaintiff, who was 24 years old at the time of the hearing, recounted that she is

14   raising her two elementary school-aged children on her own.  AR 525–26.  When

15   she becomes upset or overwhelmed at home, she retreats to a separate room from her

16   children until she can calm down and return to them.  AR 525–26.  Plaintiff's

17   mother also cares for her children at times to offer Plaintiff a break.  AR 525–26.

18   ***ALJ's Decision on Remand***

19        On December 15, 2021, ALJ Palachuk issued an unfavorable decision.  AR

20   490–505.  Applying the five-step evaluation process, ALJ Palachuk found:

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

**Step one:** Plaintiff meets the insured status requirements of the Act through September 30, 2023. AR 493. Plaintiff has engaged in substantial gainful activity since April 4, 2015, the alleged onset date. AR 493. The ALJ found that Plaintiff has engaged in "extensive work after the alleged disability onset date." AR 493. The ALJ further found that Plaintiff's "constant ongoing work" has been "near substantial activity levels" for approximately thirteen quarters of the relevant period and has exceeded substantial gainful activity level in the first quarter of 2020. AR 493.

**Step two:** Plaintiff has the following severe impairments that are medically determinable and significantly limit her ability to perform basic work activities: specific learning disorder, unspecified anxiety disorder, and adjustment disorder with depressed mood, pursuant to 20 C.F.R. §§ 404.1520(c) and 416.920(c). AR 493.

**Step three:** The ALJ concluded that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). AR 494. In reaching this conclusion, the ALJ considered whether Plaintiff's impairments satisfy the "paragraph A" and/or "paragraph B" criteria in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 C.F.R., Part 404,

Subpart P, Appendix 1).  AR 494.  The ALJ found that Plaintiff is moderately

limited in understanding, remembering, or applying information and in

concentrating, persisting, or maintaining pace.  AR 495.  The ALJ found that

Plaintiff is mildly impaired in interacting with others and in her ability to adapt or

manage herself.  AR 494−95.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff has

the RFC to perform a full range of work at all exertional levels but with the

following nonexertional limitations: she is able to understand, remember, and carry

out simple, routine, repetitive tasks and instructions; she is able to maintain

concentration, persistence, and pace on simple routine tasks for the 2-hour intervals

between regularly scheduled breaks; and she should have no contact with the public,

to accommodate her symptoms related to speech.  AR 495−96.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements

concerning the intensity, persistence, and limiting effects of her alleged symptoms

"are inconsistent because the objective medical evidence does not support the level

of impairment claimed."  AR 497.  The ALJ added: "The claimant is alleging a

complete inability to work, but her activities and the medical reports overall do not

indicate that is the case.  Additionally, the evidence from claimant's employers does

not support the level of special assistance claimant alleges she needed/received."

1    AR 497.  The ALJ proceeded to review Plaintiff's medical and other records and

2    evaluate whether those materials support Plaintiff's statements.  AR 497−504.

3    **Step four:** The ALJ found that Plaintiff has no past relevant work.  AR 504.

4    **Step five:** The ALJ found that Plaintiff has a limited education; was 18 years

5    old, which is defined as a younger individual (age 18-49), on the alleged disability

6    onset date; and that transferability of job skills is not material to the determination of

7    disability because Plaintiff does not have past relevant work.  AR 504 (citing 20

8    C.F.R. §§ 404.1568, 404.1569, 404.1569a, 416.968, 416.969, and 416.969a).  The

9    ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff

10   can make a successful adjustment to other work that exists in significant numbers in

11   the national economy.  AR 505.  Specifically, the ALJ recounted that the VE

12   identified the following representative occupations that Plaintiff would be able to

13   perform with the RFC: machine packager (medium, unskilled work, with around

14   85,000 jobs nationally); hand packager (medium, unskilled work, with around

15   77,000 jobs nationally); and hotel/motel housekeeper (light, unskilled work with

16   around 193,000 jobs nationally).  AR 504.  The ALJ concluded that Plaintiff had not

17   been disabled within the meaning of the Act at any time from April 4, 2015, through

18   the date of the ALJ's decision.  AR 505.

19   / / /

20   / / /

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

# LEGAL STANDARD

## *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record, not just the evidence supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

/ / /

1

***Sequential Evaluation Process***

2       The Commissioner has established a five-step sequential evaluation process

3  for determining whether a claimant is disabled.  20 C.F.R. §§ 416.920, 404.1520.

4  Step one determines if he is engaged in substantial gainful activities.  If the claimant

5  is engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §§

6  416.920(a)(4)(i), 404.1520(a)(4)(i).

7       If the claimant is not engaged in substantial gainful activities, the decision

8  maker proceeds to step two and determines whether the claimant has a medically

9  severe impairment or combination of impairments.  20 C.F.R. §§ 416.920(a)(4)(ii),

10  404.1520(a)(4)(ii).  If the claimant does not have a severe impairment or

11  combination of impairments, the disability claim is denied.

12       If the impairment is severe, the evaluation proceeds to the third step, which

13  compares the claimant's impairment with listed impairments acknowledged by the

14  Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §§

15  416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If

16  the impairment meets or equals one of the listed impairments, the claimant is

17  conclusively presumed to be disabled.

18       If the impairment is not one conclusively presumed to be disabling, the

19  evaluation proceeds to the fourth step, which determines whether the impairment

20  prevents the claimant from performing work that he has performed in the past.  If the

21

claimant can perform her previous work, the claimant is not disabled.  20 C.F.R. §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering her residual functional capacity and age, education, and past work experience.  20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  *Meanel*, 172 F.3d at 1113.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

/ / /

/ / /

/ /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1.     Did the ALJ erroneously determine that Plaintiff engaged in substantial gainful activity since the alleged onset date?

2.     Did the ALJ erroneously evaluate the medical source opinions in the record?

3.     Did the ALJ erroneously assess Plaintiff's subjective symptom complaints?

4.     Did the ALJ conduct an adequate analysis at step five?

### *Substantial Gainful Activity ("SGA")*

Plaintiff maintains that the updated record shows that Plaintiff has never earned an amount that would constitute SGA in any calendar year. ECF No. 11 at 10. Plaintiff continues that in the only quarter during which her earnings exceeded SGA, the first quarter of 2020, her work at UPS was characterized by mistakes, slowness, and repeated training, as evidenced by Plaintiff's testimony. *Id.* (citing AR 718). In addition, Plaintiff argues that her past work should be classified as an unsuccessful work attempt because her work was accommodated with special conditions and the limitations resulting from her impairments prevented her from successfully completing her job duties and led to her firing after a period of fewer than six months. ECF No. 13 at 2 (citing 20 C.F.R. § 404.1574(c)(3)).

The Commissioner responds that Plaintiff does not show how the record has been "updated" in any way that makes the reports cited by the ALJ unreliable. ECF No. 12 at 5. The Commissioner adds that at the prior administrative hearing, Plaintiff's counsel admitted that "'the first quarter of 2018 did get over SGA.'" *Id.* (quoting the Nov. 15, 2018 hearing transcript at AR 47).

Under the regulations, the ALJ may find a claimant not disabled if there is evidence of the Plaintiff having engaged in substantial gainful activity after the alleged onset date. 20 C.F.R. §§ 404.1571, 416.971 ("If you are able to engage in substantial gainful activity, we will find that you are not disabled."); *see also id.* §§ 404.1520(b), 416.920(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience."). However, the Social Security Administration does not consider "unsuccessful work attempts" to be substantial gainful activity. *See* 20 C.F.R. §§ 404.1574(c)(1), 416.974(c)(1). To be an unsuccessful work attempt, a claimant must have discontinued work for a "significant period" of thirty or more consecutive days before attempting to work. The work attempt must then have been for six months or less, and the claimant must have stopped working, or reduced her work and earnings below SGA level, because of her impairment or because of the removal of special conditions that took into account her impairment and permitted her to work. 20 C.F.R. §§ 404.1574(c)(2)–

1  (4), 416.974(c)(2)–(4).  Plaintiff bears the burden of establishing that her prior work

2  qualifies as an unsuccessful work attempt.  *See Argueta v. Colvin*, No. 1:15-cv-

3  01110-SKO, 2016 U.S. Dist. LEXIS 102007, at *26 (E.D. Cal. Aug. 2, 2016).

4       The unsuccessful work attempt analysis takes into account the length of time a

5  claimant was employed in a particular job.  *See* 20 C.F.R. §§ 404.1574(c)(3)–(5),

6  416.974(c)(3)–(5); SSR 05-02, 2005 SSR LEXIS 2, *1, 2005 WL 6491604, at *2-3.

7  However, Plaintiff has not cited the Court to anything definitive showing that she

8  held her UPS job for fewer than six months.  *See* ECF Nos. 11 at 10; 13 at 2; *see*

9  *also* AR 519 (Plaintiff's testimony that she worked at UPS for "at least four or five

10  months"); 718 (earnings records referencing employment at UPS over two quarters

11  in 2020).  Plaintiff also does not discuss whether she had a qualifying discontinuance

12  of work before her alleged work attempt.  *See* ECF Nos. 11 and 13.  When the

13  evidence is susceptible to more than one interpretation, the ALJ's interpretation must

14  be upheld if rational.

15       Even if Plaintiff had made an adequate showing that any of her work at an

16  SGA level was an unsuccessful work attempt, the ALJ proceeded to analyze the

17  remaining steps of the disability analysis and found that Plaintiff had no past

18  relevant work.  AR 504.  The ALJ found that Plaintiff was not under a disability

19  during the relevant period only upon finding that Plaintiff could make a successful

20  adjustment to other work that exists in the national economy.  AR 505.  This Court

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

"may not reverse an ALJ's decision on account of an error that is harmless."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  The Court finds no

reversible error in the ALJ's finding that Plaintiff engaged in substantial gainful

activity since her alleged onset date of April 4, 2015.

### Medical Opinion Testimony

Plaintiff alleges that the ALJ erred in her treatment of two medical source

opinions, examining psychologist Kris Marks, PhD, and Washington State

Department of Social and Health Services psychologist Holly Petaja, PhD.  ECF No.

11 at 11.  The Commissioner responds that the ALJ's evaluation of both opinions

was reasonable and supported by substantial evidence.  ECF No. 12 at 18.

Plaintiff applied for SSI on approximately June 28, 2016.  AR 169.  Revisions

to rules guiding the evaluation of medical evidence that took effect on March 27,

2017, do not apply to claims filed before March 27, 2017, and the "treating

physician rule" under the previous regulations instead applies.  *See* 20 C.F.R. §

416.927.

Under the treating physician rule, "the weight afforded to a medical opinion

depends upon the source of that opinion. A treating physician's opinion, for

example, is entitled to greater weight than the opinions of nontreating physicians."

*Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).  An ALJ must consider the

acceptable medical source opinions of record and assign weight to each.  20 C.F.R.

§§ 404.1527(c), 416.927(c).  This responsibility often involves resolving conflicts

and ambiguities in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998).  To reject the contradicted opinion of a treating or examining

physician, the ALJ must provide specific and legitimate reasons for doing so.

*Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).  "An ALJ can satisfy the

substantial evidence requirement by setting out a detailed and thorough summary

of the facts and conflicting clinical evidence, stating his interpretation thereof, and

making findings."  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing

*Reddick*, 157 F.3d at 725).

An ALJ may discount an otherwise valid medical source opinion as overly

conclusory, poorly supported by or inconsistent with the objective medical record,

or inordinately reliant on a claimant's self-reported symptoms, provided the ALJ

provides clear and convincing reasons to discredit the symptom allegations.  *See,*

*e.g., Coleman v. Saul*, 979 F.3d 751, 757–58 (9th Cir. 2020).

### Dr. Marks

Plaintiff asserts that the ALJ provided erroneous reasons in rejecting Dr.

Marks's 2015 opinion regarding Plaintiff's limitations.  ECF No. 11 at 12.

Plaintiff argues that contrary to the ALJ's reasoning that Plaintiff was able to get a

job after Dr. Marks's disabling opinion, Plaintiff obtained only part-time

accommodated employment that ended due to limitations emanating from

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

Plaintiff's severe impairments.  *Id.* at 12.  Plaintiff continues that, although the ALJ

reasoned that the 2021 updated psychological testing was inconsistent with Dr.

Marks's opinion, "the testing from 2021 actually shows the following: (1) verbal

comprehension score of 66, for an extremely low score in the 1st percentile; (2)

perceptual reasoning of 67 for an extremely low score in the 1st percentile; (3)

working memory score of 69, for an extremely low score in 2nd percentile; and (4)

full scale IQ score of 67, for an extremely low score in the 1st percentile."  AR

821.  Plaintiff further argues that the prior ALJ opinion discussed clinical testing

from 2014 that tended to support the limitations that Dr. Marks assessed, and Dr.

Marks's own clinical interview and mental status examination of the claimant.  *Id.*

at 13–14 (citing AR 22–23, 322, 324, 382, 384, and 821).  Lastly, Plaintiff argues

that while the ALJ cited normal findings in the record regarding Plaintiff's

presentation at appointments with no visible anxiety, those records are from

pregnancy-related medical visits and records associated with physical complaints.

*Id.* at 15.  Plaintiff maintains that other documents in the record show that Plaintiff

presented with symptoms of depression and anxiety.  *Id.* at 15 (citing mental health

treatment records on AR 352–55, 389–92, 399, and 408).

The Commissioner responds that the ALJ reasonably found that the grounds

provided by the ALJ, taken in combination, support giving Dr. Marks's opinion

little weight.  ECF No. 12 at 17.  The ALJ relied on substantial evidence in the

record in concluding that Plaintiff was only eighteen years old when Dr. Marks

opined that her symptoms would make it difficult to find a job, and the record

supports that Plaintiff subsequently engaged in, as the ALJ characterized it,

"ongoing consistent work (whether part-time or otherwise) for 5 years (2017-

2021)." *Id.* at 17 (citing AR 502). The Commissioner also maintains that Dr.

Marks's opinion is inconsistent with objective medical evidence, including the

opinion of consultative examining psychologist Dr. Lindman, that Plaintiff's

limitations are only "mild" and that Plaintiff is "capable of simple work." *Id.* The

Commissioner argues that the inconsistency of Dr. Marks's opinion with Dr.

Lindman's findings was a reasonable reason to assign Dr. Marks's opinion less

weight. *Id.* at 18 (citing AR 495, 501–02). The Commissioner further argues that

Plaintiff's presentation at numerous physical examinations without anxiety-related

symptoms and mood, affect, and behavior within normal limits is evidence that

supports the ALJ's findings. *Id.* (citing AR 408, 417, 424, 444, 451, 454, 457, 462,

467, 482, and 502–03).

On June 25, 2015, Dr. Marks completed a mental status examination and

psychological evaluation of Plaintiff. AR 319–24, 379–84. Dr. Marks noted

findings within normal limits on all of the following categories of the mental status

exam: thought process and content; orientation; perception; concentration; and

insight and judgment. AR 324. Dr. Marks noted deficits in Plaintiff's memory,

fund of knowledge, and abstract thought.  AR 324.  Dr. Marks observed that

Plaintiff displayed a "slight speech impediment[,]" but presented with a

"cooperative, generally friendly and calm" attitude, a "neutral, friendly" mood, and

a "consistent" affect.  AR 323.   In addition to interviewing Plaintiff, Dr. Marks

reviewed Plaintiff's 2015 Social Security Disability Request for Reconsideration

and documents describing the Individualized Education Programs that were

formulated for Plaintiff by the public school district through ninth grade.  AR 319.

Dr. Marks opined that Plaintiff's ability to work would be affected by her learning

disability, anxiety, and speech difficulties.  AR 322.  Dr. Marks specified that

Plaintiff's "well documented" learning disability consists of difficulty

understanding what she hears and expressing herself, as well as "weak skills in

reading, math and written language," all of which will result in Plaintiff needing "a

fair amount of accommodation on any job, if she was hired."  AR 322.  Dr. Marks

further opined that testing placed Plaintiff in the moderately anxious range and that

Plaintiff's "overall mild speech difficulties" would nevertheless contribute to

Plaintiff's difficulty in maintaining "a job in which enunciation or clarity of speech

was a necessity."  AR 322.  Dr. Marks assessed mild limitations in three areas of

functioning, moderate limitations in four areas, and marked limitations in six areas.

AR 322–23.

1    ALJ Palachuk assigned little weight to the opinion of Dr. Marks based on

2   several grounds.  AR 502.  First, the ALJ found that Plaintiff's "ongoing consistent

3   work (whether part-time or otherwise)" from 2017 through 2021 is inconsistent

4   with the degree of limitation to which Dr. Marks opined, and, moreover, Dr.

5   Marks's finding that Plaintiff cannot recall complex instructions is not inconsistent

6   with the RFC limiting Plaintiff to simple, routine tasks.  AR 502.  The Court finds

7   that substantial evidence in the record supports the ALJ's reasoning that Plaintiff's

8   employment history following Dr. Marks's report undermines the marked

9   limitations she assessed.  *See* AR 739–41 (earnings records).

10    Second, the ALJ reasoned that Dr. Marks's assessment of Plaintiff's

11   limitations is inconsistent with Dr. Lindman's post-remand consultative

12   examination concluding that Plaintiff is capable of simple work and has no more

13   than mild limitations.  AR 502.  Indeed, while Dr. Lindman's testing found

14   Plaintiff to have an "extremely low" intellectual ability, without a likelihood of

15   improvement, Dr. Lindman drew from that testing a conclusion that Plaintiff is

16   "capable of low-level employment which does not require complex tasks or

17   decision-making."  AR 822.  This opinion is inconsistent with the disabling

18   opinion of Dr. Marks and provides support for the ALJ's interpretation that Dr.

19   Marks's opinion is entitled to little weight.  While the Court is required to examine

20   the record as a whole, it may neither reweigh the evidence nor substitute its

21

judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002).

Third, the ALJ cited to Plaintiff's longitudinal treatment record indicating that Plaintiff presented at appointments for physical complaints without exhibiting anxiety-related symptoms and with mood, affect, and behavior within normal limits. AR 502. Numerous records support the ALJ's finding. *See* AR 408, 417, 424, 444, 451, 454, 457, 462, 467, 482, and 502–03. The Court will not reweigh the evidence by determining, as Plaintiff requests, that Plaintiff's presentation with depression- and anxiety-related symptoms at other appointments in 2016 and 2018 offsets the inferences that may be drawn from the records cited by the ALJ.

Taken cumulatively, ALJ Palachuk provided clear and convincing reasons to discount Dr. Marks's 2015 medical source opinion.

### **Dr. Petaja**

On July 14, 2015, Dr. Petaja, who was contracted by DSHS to review Dr. Marks's report and the evidence on which it was based, partially concurred with Dr. Marks's assessment. AR 375–76. Dr. Petaja wrote:

> Psychological evaluation by Dr. Kris Marks 6/25/2015 diagnosing Specific Learning Disorders in mathematics, reading, and written expression. This is based on records from the school district regarding special education services. IQ testing was only completed in 2003 and yielded an FSIQ of 8l. Diagnosis of Specific Learning Disorders typically requires a discrepancy between academic and IQ scores, which is difficult to achieve with a low average IQ. It is likely that this individual is experiencing difficulty in several academic areas due to

deficits in cognitive functioning. Testing with the WAIS is recommended. Diagnosis of Unspecified Anxiety Disorder is supported by the medical evidence.

ECF No. 9-1 at 375.

The ALJ gave little weight to Dr. Petaja's opinion based on its contradictions with Dr. Lindman's opinion and because Dr. Petaja did not review anything but "the one-time, brief snapshot in time captured in Dr. Marks's report." AR 503. The Court already found that ALJ Palachuk provided clear and convincing reasons for discounting Dr. Marks's opinion, and the same conclusion applies to Dr. Petaja's accompanying opinion.

The Court concludes that the ALJ did not err in her treatment of either contested medical source opinion, and denies Plaintiff's Motion for Summary Judgment, and grants summary judgment to the Commissioner, on this ground.

### *Subjective Symptom Testimony*

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for making a negative credibility finding. ECF No. 11 17–18. Specifically, Plaintiff contends, the ALJ erred when she discounted Plaintiff's testimony at the 2021 hearing based on: (1) waxing and waning symptoms; (2) inconsistency with the clinical findings; (3) inconsistency with Plaintiff's activities of daily living; and (4) Plaintiff's work history. ECF No. 11 at 18. Plaintiff maintains that objective testing and mental examinations support Plaintiff's testimony that her learning disability

1    and delays in reading, math, written expression, auditory comprehension, and

2    expressive communication, as well as psychological symptoms of anxiety and

3    depression, are disabling. *Id.* at 18–19.  Plaintiff further argues that the ALJ may not

4    penalize her or deny benefits "due to the simple fact that she is a mother" when "she

5    testified to the need for breaks and the need for her father to watch her children due

6    to her mental health symptoms."  ECF No. 13 at 11 (citing AR 60, 64–65, 525–26).

7    Moreover, Plaintiff argues, Plaintiff's "attempts to work despite her impairments

8    shall not be held against her, as she was unable to continue working due to

9    functional deficits associated with symptoms from her learning disorders, borderline

10   intellectual functioning, and anxiety[.]"  ECF No. 13 at 10 (citing *Lingenfelter v.*

11   *Astrue*, 504 F.3d 1028, 1038–39 (9th Cir. 2007)).

12        The Commissioner responds that substantial evidence supports the ALJ's

13   evaluation of Plaintiff's complaints.  ECF No. 12 at 8.  The Commissioner asserts

14   that the severity of Plaintiff's subjective complaints was inconsistent with her

15   extensive work activity, including at multiple part-time jobs simultaneously, during

16   the relevant period.  *Id.* at 9 (citing AR 493, 760–61).  The Commissioner also

17   maintains that the ALJ's reasoning was sound in finding that Plaintiff's receipt of

18   unemployment benefits is inconsistent with her alleged disability, as she was

19   required to verify weekly that she was seeking employment and was physically able

20   and available to work each day.  *Id.* at 10 (citing AR 493).  The Commissioner also

21

1   argues that Plaintiff's "robust" daily activities of caring for her young children,

2   doing her own laundry, shopping, cooking, and self-care, as well as evidence

3   indicating that Plaintiff declined medications, did not follow through with

4   recommended speech therapy, and brief engagement with counseling, all support the

5   ALJ's conclusions. *Id.* at 13–14.

6        In deciding whether to accept a claimant's subjective pain or symptom

7   testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d

8   1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant has

9   presented objective medical evidence of an underlying impairment 'which could

10  reasonably be expected to produce the pain or other symptoms alleged.'"

11  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.

12  Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there

13  is no evidence of malingering, "the ALJ can reject the claimant's testimony about

14  the severity of her symptoms only by offering specific, clear and convincing reasons

15  for doing so." *Smolen*, 80 F.3d at 1281.

16       Plaintiff argues that the medical record supports the degree of impairment that

17  Plaintiff alleges results from her learning delays and psychological symptoms but

18  cites the Court to nothing.  *See* ECF Nos. 11 at 18–19; 13 at 10–11.  In contrast, the

19  ALJ cited to materials in the record to support her conclusions.  AR 499.  Employers

20  did not substantiate Plaintiff's allegations that she received special assistance to

21

complete her work.  AR 499; 742–53.  Plaintiff asserts that she has difficulty

following instruction but was able to follow simple directives and could concentrate

during the psychological consultative exam.  AR 377, 499.  The record indicates

limited treatment given the severity of impairment alleged and minimal engagement

even with prescribed treatment.  For instance, Plaintiff did not show up to some of

her therapy appointments.  AR 385−86.  Furthermore, Plaintiff manages an

admirable scope of daily activities that includes independently caring for herself

with, as Plaintiff herself testified, occasional assistance from her mother.  AR 526.

The Court finds that the ALJ cited substantial evidence in noting that

Plaintiff's daily activities are compatible with the RFC that the ALJ formulated, and

inconsistent with Plaintiff's complaints.  Accordingly, the Court denies summary

judgment to Plaintiff, and grants summary judgment to the Commissioner, on this

ground.

**_Step Five_**

Plaintiff contends the ALJ erred at step five because "[w]hen presented with

more complete hypotheticals containing the improperly rejected limitations—

specifically, the need for reminders, reinstruction, and retraining past the

probationary period, or 20% less productive than the average worker—the

vocational expert (VE) testified that such limitation would preclude competitive

employment."  ECF No. 13 at 11 (citing AR 533–34).  The ALJ's hypothetical must

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

1  be based on medical assumptions supported by substantial evidence in the record

2  that reflect all of a claimant's limitations.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165

3  (9th Cir. 2001).  The ALJ is not bound to accept as true the restrictions presented in

4  a hypothetical question propounded by a claimant's counsel.  *Osenbrock*, 240 F.3d at

5  1164.  The ALJ may accept or reject these restrictions if they are supported by

6  substantial evidence, even when there is conflicting medical evidence.  *Magallanes*

7  *v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

8        Plaintiff's argument assumes that the ALJ erred in considering medical

9  opinion evidence and Plaintiff's subjective symptom testimony.  As discussed

10 above, the ALJ's assessment of the medical source opinions and Plaintiff's

11 testimony was appropriate.  Therefore, the RFC and hypothetical contained the

12 limitations that the ALJ found credible and supported by substantial evidence in the

13 record.  The ALJ's reliance on testimony the VE gave in response to the

14 hypothetical was proper.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir.

15 2005).  The Court denies Plaintiff's Motion for Summary Judgment on this final

16 ground.

17 / / /

18 / / /

19 / / /

20 / / /

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

4. Judgment shall be entered for Defendant.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** November 30, 2022.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
Senior United States District Judge